UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil No. 09-280-P-S |
| DAVID A. GREENE, et al., | ) ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON MOTION TO COMPEL ARBITRATION

Plaintiff Metropolitan Property and Casualty Insurance Company ("Metropolitan") moves for an order compelling arbitration and staying the instant action pending the completion of arbitration. *See* Plaintiff's Motion To Compel Arbitration and Stay Proceeding ("Motion To Compel") (Docket No. 32) at 1. It also seeks the withdrawal or the stay, pending arbitration, of a scheduling order entered by the court on April 29, 2010. *See* Plaintiff's Objection to Scheduling Order ("Scheduling Motion") (Docket No. 33). For the reasons that follow, I recommend that the court grant the Motion To Compel and stay the case pending arbitration. Because the Scheduling Motion hinges on the grant of the Motion To Compel, I defer action on that motion until the court rules on this recommended decision.

### I. Applicable Legal Standards

The Motion To Compel implicates 9 U.S.C. §§ 3 and 4, provisions of the Federal Arbitration Act ("FAA"). Section 3, addressing the issuance of stays in favor of arbitration, provides in its entirety:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

1

agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 4, addressing motions to compel arbitration, provides, in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

"In order to grant a motion brought pursuant to [9 U.S.C. §§ 3 and 4], the Court must find that (i) there exists a written agreement to arbitrate, (ii) the dispute in question falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F. Supp.2d 152, 155 (D. Me. 1999).

## II. Factual Background

On June 26, 2009, Metropolitan filed a nine-count complaint against David A. Greene, Insurance 24.Com, Inc. ("I24"), Kimberly Ann Doucette, and Doucette Insurance, LLC ("Doucette Agency"). *See* Complaint and Jury Demand ("Complaint") (Docket No. 1). Metropolitan alleged that Greene and I24 (together, the "Greene Defendants") had an agency agreement permitting them to issue and underwrite homeowners' insurance policies on behalf of Metropolitan ("Agency Agreement"), and that I24 had a producers' agreement with Doucette and the Doucette Agency (together, the "Doucette Defendants"). *See id*. ¶¶ 9-11. Metropolitan seeks damages as a result of its coverage of a fire loss incurred by policyholder Kyi M. Maung of Mechanics Falls, Maine, on September 4, 2007, claiming that the Greene and Doucette

2

defendants wrongfully caused it to issue a policy of coverage on the Maung property in March 2007 when the property did not qualify for coverage. *See id.* ¶¶ 12-19.

The Greene Defendants were served with the summons and complaint in this matter on August 11, 2009. *See* Docket Nos. 9-10. On September 9, 2009, they answered the complaint, *see* Docket No. 13, and moved for a stay and/or dismissal of the matter and to compel arbitration, see Motion To Stay and/or Dismiss and To Compel Arbitration ("Greene Motion To Compel") (Docket No. 14). They invoked section 12 of the Agency Agreement, which provides:

> If any dispute arises between the **Agent** and the **Company** and the **Agent** and the **Company** cannot settle the dispute through negotiation, the **Agent** and the **Company** agree to first try in good faith to settle the dispute by Mediation. If the **Agent** and the **Company** cannot resolve the dispute through Mediation or if the **Agent** and the **Company** agree that Mediation is not appropriate to the given dispute, then the **Agent** and the **Company** will submit the dispute to arbitration pursuant to the rules of the American Arbitration Association. The parties agree that arbitrators should have a background in insurance and/or insurance related topics. The arbitration will be conducted in a city, with a major airport within twenty (20) miles, nearest to where the **Agent's** headquarters are located unless the **Agent** and the **Company** mutually agree otherwise. The **Agent** and the **Company** will bear the expenses of any arbitration equally and the **Agent** and the **Company** agree that the determination of the arbitrator(s) will be final and binding.

*Id.* at 2; Agency Agreement, Exh. A to Complaint, § 12.

In support of their motion to compel, the Greene Defendants represented that (i) on February 6, 2009, their counsel had sent a letter to Metropolitan's counsel reminding him that section 12 of the Agency Agreement required a process of negotiation, mediation, and then arbitration, (ii) between February and June 2009, Metropolitan made no effort to negotiate, mediate, or arbitrate, instead filing the instant complaint on June 26, 2009, (iii) Metropolitan refused to participate in mediation or arbitration, apparently because of lack of participation by the Doucette Defendants, and (iv) the Greene Defendants were willing to participate in mediation or arbitration as required by the agreement, which contained "no contingency for the

participation of any other third parties such as the Doucette defendants." Greene Motion To Compel at 3.

The Greene Defendants argued, *inter alia*, that the dispute between themselves and Metropolitan was within the scope of section 12 of the Agency Agreement, which applied to "any dispute" arising between them. *See id*. at 5-6. They contended that, in view of federal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See id*. at 6.

On October 15, 2009, this court issued an order staying the action for six months, having been advised by all parties that they were in agreement that the matter should be stayed to permit them to engage in mediation and to explore possible arbitration. *See* Order (Docket No. 24).

James Bowie, attorney for the Greene Defendants, advised the court by status report dated April 22, 2010, that the parties had mediated the matter on April 16, 2010, before John Whitman in Portland and had been unable to reach agreement. *See* Status Report (Docket No. 28). He stated that his clients no longer were pressing their request that the matter be sent to arbitration and formally withdrew that motion. *See id*. He noted that the issuance of a scheduling order therefore appeared to be appropriate. *See id*. On April 26, 2010, the court lifted its stay and deemed the Greene Motion To Compel withdrawn. *See* Docket No. 29. The following day, Metropolitan filed a status report stating, for the record, that it did not waive its right to compel arbitration under the Agency Agreement and "reserve[d] the right" to file a motion to compel arbitration. *See* Status Report (Docket No. 30).

On April 28, 2010, the court issued a scheduling order. *See* Docket No. 31. The following day, Metropolitan filed the instant Motion To Compel and Scheduling Motion. *See* Docket Nos. 32, 33.

4

In his February 6, 2009, letter to Metropolitan's counsel, the Greene Defendants' counsel stated, in relevant part:

> Lastly, in reviewing the Independent Agency Agreement that we believe governs the relationship between the parties, I would note that Section 12, Dispute Resolution, requires that the parties negotiate any dispute, then attempt to settle the matter through Mediation. If the matter is still not resolved after Mediation, they are required to proceed to Arbitration through the American Arbitration Association. It is our assumption that should Met P&C wish to pursue this claim against Insurance24.com despite the beneficial and cooperative relationship that has up to this time existed between the parties, that it do so in accordance with this Agreement.

Letter Dated February 6, 2009, from Kenneth C. Bartholomew, Esq. to Jeffrey T. Edwards, Esq. ("2/6/09 Letter") (Docket No. 36-1), attached to Objection to Plaintiff[']s] Motion To Compel Arbitration and Stay Proceedings ("Greene Defendants' Opposition") (Docket No. 36), at 3.

In a letter dated June 26, 2009, to the Greene Defendants' counsel enclosing a courtesy copy of the instant complaint, Metropolitan's counsel stated:

> In your letter of February 6, 2009, you have asserted that any dispute[s] between [Metropolitan] and [the Greene Defendants] are subject to an arbitration agreement.
>
> I am prepared to agree to the stay of the federal court action pending completion of arbitration, in accordance wit[h] the Agency Agreement, provided that the claims against [the Doucette Defendants] are also presented for arbitration.

Letter Dated June 26, 2009, from Jeffrey T. Edwards, Esq. to Kenneth C. Bartholomew, Esq. ("6/26/09 Letter") (Docket No. 36-2), attached to Greene Defendants' Opposition.

### III. Discussion

Metropolitan seeks to compel the Greene Defendants to arbitrate the parties' differences pursuant to section 12 of the Agency Agreement, the section previously invoked by the Greene Defendants and quoted above. *See* Motion To Compel at 2-3. The Doucette Defendants take no position on whether Metropolitan's claims against the Greene Defendants are arbitrable. *See*

Doucette Defendants' Response to Plaintiff's Motion To Compel Arbitration and Stay Proceeding (Docket No. 34) at 2. They state that, in the event the court determines that those claims are arbitrable, they have no objection to the entry of a stay while those claims are arbitrated. *See id*.

The Greene Defendants admit that section 12 of the Agency Agreement constitutes a written agreement between themselves and Metropolitan to arbitrate. *See* Greene Defendants' Opposition at 2. However, they argue that the instant dispute is not within the scope of that agreement, that Metropolitan has waived its right to insist upon arbitration, and that granting the Motion To Compel would prejudice them. *See id.* at 3-7.

### A. Scope of Agreement

This court has stated:

> Assessing the scope of an arbitration agreement in relation to a particular dispute is a matter of both state law and general federal substantive law. It is at this point in the analysis that the federal presumption of arbitrability comes into play: as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Bangor Hydro-Elec*., 62 F. Supp.2d at 158 (citations and internal quotation marks omitted).

The Greene Defendants now take the position that the dispute in question is not subject to arbitration because section 12 pertains only to bilateral disputes between the "Agent" and the "Company," and here the dispute involves multiple parties, namely, the Agent, the Company, and the Doucette Defendants. *See* Greene Defendants' Opposition at 4. As Metropolitan rejoins, *see* Reply to Defendants Insurance24.Com's Inc. and David A. Greene's Objection to Plaintiff's Motion To Compel Arbitration ("Reply") (Docket No. 40) at 3-4, this argument not only represents a turnabout from the Greene Defendants' prior litigation position that the dispute *does*

6

fall within the scope of the arbitration agreement, but also constitutes too narrow a construction of the broad language at issue.

The language in question provides, in relevant part, "If *any dispute* arises between the **Agent** and the **Company**" that the Agent and the Company are unable to settle first through negotiation, then through mediation, "the **Agent** and the **Company** will submit the dispute to arbitration[.]" Agency Agreement § 12 (emphasis added). That language most reasonably is read to encompass disputes between Metropolitan and the Greene Defendants even if those disputes also involve other parties, rather than to exclude entirely that latter class of disputes. *See Maine Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.*, 222 F. Supp.2d 50, 55 (D. Me. 2002) ("The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (citation and internal punctuation omitted).

The instant dispute falls within the scope of the parties' arbitration agreement.

### B. Waiver/Prejudice

The First Circuit has "repeatedly held that a party may, by engaging in litigation, implicitly waive its contractual right to arbitrate." *Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001) (citation and internal quotation marks omitted). "In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the

7

plaintiff, whether there has been a long delay in seeking the stay or whether the enforcement of arbitration was brought up when trial was near at hand." *Id*. (citation and internal punctuation omitted). "Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place, and whether the other party was affected, misled, or prejudiced by the delay." *Id*. (citation and internal punctuation omitted).

"But in order for plaintiffs to prevail on their claim of waiver, they must show prejudice." *Id*. (citation and internal quotation marks omitted). "The burden to prove waiver is a weighty one, particularly where the party seeking arbitration has not answered the complaint . . . or otherwise locked litigious horns." *Bangor Hydro-Elec.*, 62 F. Supp.2d at 159 (citation and internal punctuation omitted). "It is not enough to simply claim prejudice." *Id*. at 161 (citation and internal punctuation omitted). "It must be demonstrated." *Id*.

The Greene Defendants contend that Metropolitan waived any right to arbitrate by "lock[ing] litigious horns[,]" having repeatedly rejected overtures to arbitrate the case and chosen instead to file suit and involve the Doucette Defendants. Greene Defendants' Opposition at 5-6. They state that Metropolitan's change of heart comes too late, occurring only after mediation failed and almost 14 months after Metropolitan expressly rejected their written request to arbitrate. *See id*. They argue that they have been prejudiced by being obliged to respond to the complaint and file their own motion to compel arbitration and by suffering a "significant dislocation" in their relationship with the Doucette Defendants as a result of Metropolitan's decision to name them as co-defendants. *See id*. at 6. They assert that this dislocation has harmed prospects of a friendly or non-adversarial resolution of the parties' differences and that

Metropolitan now seeks to force them into arbitration in the absence of the Doucette Defendants. *See id*. at 6-7.

Metropolitan responds that:

1. It did not demand arbitration 14 months after the issue first was raised. *See* Reply at 5. Rather, the Greene Defendants demanded arbitration, and Metropolitan at that time indicated its willingness to participate in mediation and/or arbitration provided that all parties subject to the obligation participated. *See id*.

2. Its conditioning of its willingness to participate in mediation and/or arbitration on the participation of the Doucette Defendants was predicated on its construction of the arbitration agreement as arguably pertaining to them. *See id*. at 1-2. The term "Agent" is defined to include "the agent identified herein," namely I24, and "its applicable employees and representatives." *Id*. at 2; *see also* Agency Agreement § 2(b). Metropolitan reasoned that, with respect to the transaction giving rise to the instant litigation, the Doucette Defendants arguably were "employees and representatives" of I24. *See* Reply at 2.

3. Metropolitan has at all times been willing to participate in arbitration. *See id*. at 5. It also agreed, as did the other parties, to participate in mediation. *See id*.

Metropolitan further disputes that there has been any prejudice to the Greene Defendants that would operate to preclude Metropolitan from enforcing the requirements of the arbitration agreement. *See id*. at 6. It argues, *inter alia*, that there is no conceivable prejudice resulting to the Greene Defendants from the naming of the Doucette Defendants as defendants, given that the Doucette Defendants were directly involved in the operative events giving rise to the litigation, and it is not possible to proceed with resolution of the case without their direct and immediate involvement. *See id*. It points out that whether the sets of defendants are united or divided has

9

no bearing on whether there is an enforceable agreement to arbitrate disputes between itself and the Greene Defendants. *See id*. at 7.

Metropolitan has the better of these arguments. There is no indication that it has refused to engage in arbitration. Rather, it has expressed willingness to participate in mediation and then arbitration, as contemplated by the Agency Agreement, provided that the Doucette Defendants also participated. Its position that the Doucette Defendants were covered by the arbitration provision of the Agency Agreement was, at the least, colorable. Further, pursuant to the arbitration agreement, arbitration could not be demanded until the parties had tried and failed to settle their differences, first through negotiation and then through mediation. Metropolitan invoked its right to compel arbitration less than two weeks after the parties' attempt at mediation failed.

Nor have the Greene Defendants suffered prejudice of a type or degree sufficient to support a finding of waiver of Metropolitan's right to compel arbitration. While Metropolitan did initiate the instant litigation, the Greene Defendants have been obliged to do relatively little in this forum apart from focusing on the questions of whether mediation and/or arbitration should be undertaken or compelled. The case was stayed for a lengthy period of time, and the gears of litigation, including discovery and motion practice, have not been engaged. The Greene Defendants have not sustained the sort of prejudice from "locking litigious horns" that courts have found to weigh against the grant of a motion to compel arbitration. *Compare, e.g., Brennan v. King*, 139 F.3d 258, 263 (1st Cir. 1998) ("We have found arbitration defenses waived when a party sought to take advantage of an arbitration clause by raising the issue as a defense late in the litigation."); *Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of N.H.*, 671 F.2d 38, 44 (1st Cir. 1982) (defendant waived right to arbitration when it engaged in

considerable discovery, prepared the case for summary judgment, and waited until after the district court had decided that issue before advocating for arbitration).

Metropolitan further persuasively argues that it cannot fairly be faulted for straining the relationship between the Greene and the Doucette defendants. *See* Reply at 6. It properly named the Doucette Defendants, who assertedly played an integral role in the events giving rise to the litigation, as co-defendants in the case. Whether the co-defendants choose to approach this matter in a divided or united fashion is beyond Metropolitan's control.

To the extent that the Greene Defendants suggest that they will suffer prejudice by virtue of being compelled to arbitrate in the absence of the Doucette Defendants, they do not explain the nature of the expected prejudice, *see* Greene Defendants' Opposition at 6-7, and it is not otherwise apparent, particularly in view of their earlier willingness to file a motion to compel arbitration with Metropolitan in the absence of the Doucette Defendants.

## IV. Conclusion

For the foregoing reasons, I recommend that that the Motion To Compel be **GRANTED** and that the court **STAY** the instant case pending arbitration. I **DEFER** ruling on the Scheduling Motion pending the court's action on this recommended decision.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 29th day of August, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge